The court will proceed to the sixth case, Doherty v. FDIC. Good afternoon. May it please the court. This is a case seeking a reversal on a circuit court of Cook County order granting the defendant's motion based on res judicata. Res judicata was decided in the state level and it's a three-pronged test in the state of Illinois. The three prongs must be met by the party that is seeking res judicata to apply. Res judicata obviously being those things having been decided. The first part is there must be a final judgment on the merits. In this particular case there was never a final judgment on the merits. What happened in this case, the bank called a note, filed a case. They submitted documents that we contend were fraudulent. When the bank filed a motion for summary judgment, I responded to that motion. I retained a handwriting expert which in fact agreed with my conclusion that the bank had presented fraudulent documents to the court. They had provided a fraudulent affidavit, a fraudulent motion for summary judgment, a fraudulent request to admit. All presented to the court. Interestingly enough, they had a dispositive motion on file, a motion for summary judgment against me and Werth. What happened in the case was I asked for depositions for the persons that executed those documents. They were not notarized. They were just put on the court file as being true and accurate. I said to the court, I said I would like to take depositions of the individuals who signed those documents. I filed a response citing the forgery, citing the handwriting expert, and citing that I never signed those documents. As you can see from the record, the handwriting expert clearly says these were forged. In fact, the forgery is diabolical in the sense that it's a fraud on the court, obviously. That's diabolical. But what it did was, it made me question, did I sign those documents? Because it was my signature. They had lifted my signature from a different writing and put it on a new extension. I had signed numerous extensions. So when I got the documents, I looked at it and said, oh, maybe I did sign it. But I knew I didn't sign it. But I had no way to verify that. So I hired the expert, paid the expert, went to court. When they went for this dispositive motion, the lawyer at the time, which is a different lawyer than is here today, I don't know what went on in the office. They refused to provide the deponents in my office for their depositions. And they immediately took a non-suit, a voluntary non-suit. And when they took that voluntary without prejudice, they went to court. I had filed affirmative defense and say, look, in this particular case, there's fraud going on here, and I can prove it. And when I went to court, they non-suit the case. Mr. Doherty, let me ask you a question just as a factual matter. One of the things you said in your reply brief is you said if Doherty did not pay the note and retain a handwriting expert, this is on page five, if you did not do those two things, the bank would have obtained a judgment based on fraud forgery. I just have a real basic factual question. Have you personally had to pay on the alleged guarantee? I paid the entire note off. I never missed a payment, and I paid everything off. So that's that $400,000 or whatever? I paid everything off. I paid what was due and owing, and the attorney fees, and the fines, and the late fees, and I never missed a point. Okay, so just help me out then. So is the lawsuit that you then initiated when you became a plaintiff, not a defendant, a plaintiff, the money that you were trying to recover, were you trying to recover the amount you paid as the loan? No. Or were you trying to recover the money you paid to hire the handwriting expert? That's part of it, yes. Okay, are there other parts? Well, you are an attorney, obviously. Yes. What else? Well, the interest that I wouldn't have come due, the attorney fees that wouldn't have come due, and the bank filed three different causes of action when they only needed to file one. They duplicated the effort, causing more expenses and fees. In addition, they committed fraud. I mean, there's questions whether there's punitive damages allowed for a bank that files papers that are fraudulent. I'm just trying to figure out what happened here as a little bit of a matter of fact, okay? Why did you pay the loan off if you thought that somebody forged your signature in a guarantee? Why wouldn't you have said, well, I may have owed on the guarantee a while ago, but I don't owe on it now? I'm not sure I understand. Why did you pay the loan off? Well, the problem is, that's a good question, and I've been thinking about this for the last week. You can't divorce the time from what we were going through. In 2010, when the last extension was, or 2008, when the last extension was signed by everybody, the rate was- Including you? Including me. Okay. Six and three quarters, everybody signed there. Then 2010 came around, and during that time period, the rates had reduced significantly, and they asked us to file an extension on the note. And the position was, well, we need a better rate, times are worse. The rate money, the demand for money is different now. It's 4% or 3.5%, or banks are even giving 3%. And in addition, if the bank wanted to call the note at that point, I don't think we wouldn't be here. But they didn't want to call the note, because the diabolical things that the bank was doing was, the building was now worth half. So they were standing to lose $600,000, $800,000. They didn't want to do that. They had a customer, a client, that was paying six and three quarters every month. We continued to ask the bank, say, let us extend the note, let's get a new rate, let's work something out. Nobody called back. Nobody did anything. We couldn't do anything, but they would send us the payment due, we would pay it. And we didn't even learn, I didn't even learn to have forged the extension until they filed the lawsuit. And then at that point, I- Had you already paid the loan? Had you paid the loan before you learned of the forged extension? Well, the monthly payment. Oh, I see. There was a monthly print. It's not a lump sum payoff. No. I got it. I got it. They called the note. But the part is, the issue is, the bank is doing things, forging my name, forging other people's names, for their benefit. Not for me, not because the bank, because by 2014, now the property was back worth what it was back in the 06 or 05, and it gained its value back. So that's why they called the note, because they were going to recoup all the money anyways. So their fraud and deceitfulness came before me, and I had to get an expert. I had to fight this claim. And they still received their money. What we didn't do, when I went to court, they said it was res judicata, which I don't understand, because it was a non-suit, a voluntary non-suit. And nothing was ever decided. The documents that I presented to the attorney at the time, and the documents I presented as a response to the summary judgment, the forgery, they non-suited, a VD, a voluntary dismissal. That's not res judicata. In addition, I know, I'm sure you're familiar with res judicata, and the three elements, identity of cause of action, identity of the parties. But in this case, when I went back, I wanted to know who did it. I wanted to know who forged those names. I wanted to take the depositions of John Gambar and Jan Tran, the people that were on the signature note. I wanted to find out what happened. I wanted to recoup the time and effort and the money I spent fighting the case I shouldn't have had to fight. I mean, the bank has all the responsibilities. If someone forged the president of a bank's signature, they'd probably end up in jail. I mean, this is a case where nothing was decided, and then obviously, the only reason we're here is because the FDIC took over the bank. Because after I contacted the FDIC, the FDIC looked closer into the nefarious feelings of this bank and found that they cost the taxpayers $90 million over their fraudulent time period of what they were doing. Which is neither here nor there, but that's why we're here in federal court. Because this, I felt, just as a state thing, I wanted to recoup what I thought was improper, and I wanted the bank to stop practices which I think we can all agree are fraudulent. Mr. Daugherty, assuming as you do the forged signatures and the fraud, what damages resulted from that? Well, I had to hire a handwriting expert. I had to pay costs and fees to attorneys that I should not have had to pay. In addition... So that's the $30,000? $30,000, yeah. I didn't mean to tie you to specifics, but... The way I feel about how this whole thing happened, it should be about a million, but that's neither here nor there. Because both sides should be held to the same standards. A person getting a loan and the bank getting a loan has to deal in honesty and fairness. In this case, I was never able to present to the court how I thought, and I can prove it, I had the handwriting expert, that they used... If you take 2010 to 2014, I think if the bank had been honest, the rate would have been 4%, and that would have been payments of $3,000 or $4,000 less a month on the note, which would have been fair and clean hands dealing. I see my time is up. You did go into a rebuttal, but I'll give you two minutes to start. Thank you, Judge. In the race judicata, the only issue I have is I don't understand how they ruled in the circuit court. I was baffled by that because it was a voluntary non-suit. The parties are different, and my claim is about fraud. Theirs is about collection, and the Seventh Circuit addressed that in Whitaker v. Amirotech, and I'm sure you're familiar with the case. All right, thank you. Mr. Gorrisco. Good morning, and may it please the court. My name is John Gorrisco, and I represent the FDIC as receiver for Washington Federal Bank for Savings. The district court, which adopted the state court's pre-removal judgment, properly dismissed Mr. Doherty's amended complaint as barred by race judicata. Illinois law governs, and under Illinois law, as Mr. Doherty mentioned, there are three elements of race judicata. The first is a final adjudication on the merits. Mr. Doherty pointed out that the last order in what we call in our brief the guarantee action was a voluntary dismissal without prejudice of the remaining claims. As we set out in our brief, the law in Illinois with respect to whether a final adjudication on the merits has occurred, and this is the Rhine decision, which was then affirmed in 2008 by the Illinois Supreme Court in Hudson, is that as long as there is a final adjudication on the merits of one claim in a case, that final adjudication has res judicata effect on any other claims that could have been brought or were brought, even if those other claims in the lawsuit did not go to a final adjudication on the merits. In this case, Mr. Doherty's co-guarantor, John Ferrano, was a defendant on another count, and Washington Federal obtained a default judgment against Mr. Ferrano. It was a final judgment on the merits. The court specifically found that Washington Federal was owed money because of the default on the worth loan, monetized that, gave a judgment in favor of Washington Federal for a specific amount of money. Under Illinois law, that's a final judgment on the merits, and as both Illinois courts and this court have held, a default judgment can constitute a final adjudication on the merits for purposes of res judicata. See, the part of this that gets really disconnected for me is I agree with your description of what happened. I mean, that's exactly the way I read it here, just as a factual matter. But you say, you argue in your brief, you know, that the court here could not have awarded Mr. Doherty any damages under any claim in his complaint without first determining that Washington Federal was not entitled to recover under the worth loan. That's what gets really disconnected for me. And the reason I say that is because when you have a party that defaults because it's not participating in the litigation, sure, you have a default judgment entered in a certain dollar amount. I mean, that's just the consequence of a default judgment being entered. But the events that gave rise to that default judgment and its entry don't have anything to do with answering the question one way or another about whether anybody forged Mr. Doherty's signature or not. In other words, I see a complete disconnect between the default judgment and the claims that he wants to bring in his complaint, even if he may ultimately win on them, or even if, as you said, you know, he may not state a claim. But I don't see it as res judicata, Bart, because they're entirely disconnected. And Judge Scudder, the way to look at it in terms of how they are connected is that the guarantee action involved claims by Washington Federal claiming that Worth owed on the Worth loan and that the two guarantors, Ferrano and Doherty, owed by virtue of having guaranteed the Worth loan. Mr. Doherty... But Ferrano never showed up. That's correct. And that's why you got the default, not you, but that's why the bank got the default judgment. That's correct. And that default judgment addressed the merits of whether any amount was due and owing on the Worth loan. The court found that an amount was due and owing on the Worth loan and identified that specific amount, because unless something was due and owing on the Worth loan, there'd be nothing due and owing on the guarantee. And Mr. Doherty's argument... But that doesn't answer the question about whether his signature was genuine. Mr. Doherty's argument is that because of the forgery, even in his reply brief, he argues that the Ferrano default judgment was obtained by fraud because of this alleged forgery. It's all connected together. If Mr. Doherty is correct that there was, in fact, a forgery here, as he said, the argument could be made that the Ferrano judgment was obtained by fraud. He doesn't have any standing to challenge that. Ferrano's a person, right? Yes. So whoever Mr. Ferrano is, Mr. Ferrano's the only one that can, I don't even know if he can do it now, but challenge a default judgment entered against himself in some amount. And if Mr. Ferrano had the benefit of a judgment obtained by Mr. Doherty in this case, finding that the loan documents which were submitted to the court and enabled Washington Federal to obtain a default judgment against him, that those were fraudulent, then that might give him... The only thing he's arguing is fraudulent, as I read the complaint, is his signature. That is not what he alleges. The allegations, he submits a report of a handwriting expert, which alleges that an entire signature block from the 2008 extension was cut and pasted onto the 2010 extension. Not just Mr. Doherty's signature. So were Mr. Ferrano to be able to point to a court finding that in fact that 2010 extension was forged, that could conceivably enable him to attack the default judgment that Washington Federal obtained against him. So that is why... Now tell me the procedure. Does the plaintiff's voluntary non-suit end that litigation? The voluntary non-suit of the two remaining claims in the lawsuit ended that litigation, yes. Where did the default judgment come in? The default judgment was entered in August of 2014. The voluntary dismissal of the last two remaining claims occurred in June of 2015. And that is what ended the lawsuit in June of 2015. So we had a default judgment... Default entered, rather. Yes. And then the voluntary non-suit. Yes. The sequence was Mr. Doherty asserted his forgery affirmative defense on August 5th of 2014. Mr. Ferrano was defaulted. A default judgment was entered a few weeks later on August 27th of 2014. And then the two remaining claims in the lawsuit against Worth and against Mr. Doherty were voluntarily dismissed in June of 2015. And that ended the lawsuit. The second element of res judicata is identity of causes of action under Illinois law. What that means is that the causes of action have to arise from a single set of operative facts. In this case, we believe it's pretty straightforward that they do. The allegations of forgery, as Mr. Doherty calls them, the diabolical allegations of forgery, first presented themselves in the affirmative defenses that he filed in the guarantee action. That alleged forgery of the extension of the Worth note is also what underlies his complaint in this case. Essentially, it's similar to the Ross advertising case we cite, where the allegations made in case number two were asserted as a defense in case number one. So we believe that there is an identity of causes of action here. And with respect to the third element, which is identity of parties or privies, Mr. Doherty doesn't dispute that the FDIC's receiver is a statutory successor in the interest of Washington Federal. He points out that he also sued Mr. Gambara and Ms. Tran, along with their outside counsel, Crowley and Lamb. As we set forth in our brief, this court has recognized, as well as the Illinois Telecourt, what matters for privity is identity of interest. Basically, Mr. Doherty's allegations are that his newly added parties, Gambara, Tran, and Crowley and Lamb, basically were the instrumentalities that Washington Federal used to commit this alleged fraud on him. So we believe that there is privity of interest. The three elements of res judicata were met here, as the state trial court correctly found. And as we also pointed out in our brief, even if there were an issue about the application of res judicata here, there's an alternative ground for dismissal, which is that none of Mr. Doherty's claims state plausible claims for relief under Illinois law for various reasons. I see that my time's expired. If there are any questions, then we'd ask that the district court be affirmed. Thank you, Mr. Cooper. Mr. Doherty, I said you may have two minutes, and there you have them. Thank you. Just as the counsel's argument as to the default judgment, there's an affidavit that was attached to their motion for summary judgment in which not him, but Crowley and Lamb prepared and was sworn out as an affidavit by John Gambara, in which he states to the court on the basis of the judgment, it says, Thereafter, on or about May 1, 2010, the maturity date of the note was extended to March 1, 2014. Are you trying to challenge the default judgment in any way? Like you thought, I don't think I have standing. Well, what difference does it make whether Ferano's signature, in your view, whether it's forged or not forged? That's a default judgment. Who cares? Well, I agree. I don't think it adds to the argument as it is res judicata. I mean, Ferano, he was served in the lawsuit. He could have, I don't know what happened there, but he just chose not to defend. He had a default judgment entered. So your case, as you see it, is about you and you alone. Exactly. I agree. I just, yeah, for the purpose of this case, I don't think the three prongs for res judicata have been met as to me. Thank you very much. I'd ask for a ruling. Thanks to both counsel. The case is taken under advice and the court will stand in recess.